Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Catherine E. Zinoff presiding, along with Justice Mary S. Shostak and Justice Donald C. Hudson. The case is number 2180296, People of the State of Illinois, Plaintiff-Appellee v. John W. Sperry, Defendant-Appellant. Arguing for the Appellant, Sade V. Edwards. Arguing for the Appellee, Katrina M. Kuhn. Thank you very much. Attorney Edwards, you may begin. Thank you. May it please the Court. My name is Sade Edwards, and I represent Defendant-Appellant Mr. John Sperry. Now, Sperry was charged with attempt murder, aggravated battery with a firearm, and two counts of aggravated fleeing. At trial, Sperry did not deny that he shot the victim and caused injury. His defense was that he accidentally did so. During deliberations, the jury asked the question about the knowledge element of aggravated battery, but received no further instruction on the matter. Ultimately, Sperry was acquitted of attempt, but found guilty of aggravated battery. The issues I'm going to discuss today, both are instructional errors, and both involve the requisite mental state of knowledge. First, the issue's instruction for aggravated battery was reversible error under these circumstances where it did not accurately state the knowledge element. Now, for aggravated battery, knowledge attaches to both the conduct and the result. In other words, the state was required to prove beyond a reasonable doubt that Sperry was consciously aware that he was discharging a firearm, and that he did so with practical certainty that it would result in bodily harm to Angel Ortiz. Thus, as the state concedes, an accidental discharge is not a knowing one, and Sperry's defense here was accident. The issue's instruction, however, failed to, well, only attach the knowledge element to the conduct and failed to attach it to the result, thus allowing the jury to convict him even if they believed his accidental defense. The definition instruction which accurately stated the knowledge element did not cure the defect here because the jury was then presented with conflicting instructions. And to elaborate on that, the definition instruction essentially said knowingly causing bodily harm and discharging a firearm, while the issue's instruction stated only knowingly discharging a firearm. As a result of the conflicting instructions, the knowledge element was muddled and diluted, and that's evidenced by the subsequent jury note asking about that specific phrase, knowingly discharging a firearm. And that leads me to the second issue, that trial counsel was ineffective for acquiescing to the trial court's response to the jury's question about the knowledge element. Specifically, the jury asked, does knowingly discharged firearm mean that he intended to discharge the gun on purpose or that he knew a gun was discharged? Based on this question, the jury was clearly confused as to the knowledge element and was seeking clarification on that. IPI 501B, the definition instruction for knowledge, was specifically drafted to be given in situations such as this, where the jury manifests confusion as to the central element of knowledge. Despite case laws such as People v. Laurie and People v. Lovelace, and committee notes directing that IPI 501B given, counsel acquiesced to the trial court's incorrect response that no further instruction be given, and this was objectively unreasonable. Sperry was prejudiced as a result because the jury was confused about this element, and Sperry's state of mind was the crucial element in dispute in this case. He would have benefited from the instruction because the jury would have gotten the guidance they were seeking and would have then known that an accidental discharge is not a knowing one. Each of these errors either individually or cumulatively denied Sperry a fair trial. As for the closely balanced analysis, I mainly will rely on the arguments made in the briefs as to that, but I do want to add that a reviewing court's inquiry for the closely balanced analysis involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witness credibility. Here, the case was closely balanced because both sides were equally plausible and the state's witnesses were severely impeached. Even if the court finds that the case was not closely balanced, this error is still reversible under second-pronged plain error because it created a serious risk that the jury convicted him based on a misapprehension of the knowledge element, and that leads me to the second issue involving counsel's ineffective assistance. In its brief, the state agreed that the jury's question implied that it misunderstood the mental state necessary for aggravated battery with a firearm, and it acknowledged that the Strickland standard applies and has two prongs, deficient performance and prejudice. However, the state offers no argument about whether Sperry was prejudiced by the juror's misunderstanding of knowledge, an essential element of the offense. In its brief, the state argues only that the juror's misunderstanding of the law was to Sperry's benefit, and that, therefore, it was sound strategy for counsel to not try and clarify their confusion. However, the failure to offer an instruction essential to the fair determination of the case by the jury cannot be excused as trial strategy, and that was the holding in People v. Larry. Here, the knowledge instruction was essential to the fair determination of Sperry's case because Sperry raised an accidental defense, thereby challenging that mental state. Consequently, Sperry was convicted of the very offense the jury was incorrectly instructed and seeking clarification on, and for all these reasons, John Sperry requests that this court reverse his aggravated battery conviction and remand for a new fair trial. Thank you, Your Honors. I'm now available to take questions. Thank you very much. Justice Shostak, do you have questions? I do, Ms. Edwards. The Supreme Court rules tell us that an IPI shall be used unless the court determines it does not accurately state the law. Did the court in this case make that finding? When it did not give that jury instruction? Are you referring to IPI? Knowingly. Okay. Yeah. Okay. The definition of knowingly. Did the court... Did the court make that finding? I'm sorry, can you repeat the question? Yeah. The Supreme Court rules tell us that the IPI definition or any jury instruction for an IPI shall be used unless the court determines that it does not accurately state the law. In this case, the court did not give the definition of knowingly, the IPI definition of knowingly. Before refusing to give that definition, did it make a finding that it did not accurately state the law? No, the trial court never stated that its basis for refusing to give IPI 501B was because it didn't accurately state the law. His reasoning was that it was too confusing, essentially, for the jury to understand. He did give 11.115 and 11.116, the IPI instructions. Wasn't that enough? And were they really inconsistent? It was not enough. Giving due consideration to the facts of this case where Sperry was to understand what that meant and that it attaches to both conduct and result. The instructions here did conflict because one said knowingly causing bodily harm and discharging a firearm, where the issues instruction stopped at discharging a firearm, which led to the juror's question seeking clarification about that term. Okay. Why would we not consider this trial strategy? I mean, it's an easy way to confuse, as you say. Why should we disregard what the state sets out in that trial strategy? Okay. And that's for IPI 501B. It's not trial strategy because, again, Sperry's defense was accident. And to not give them that clarification about the knowledge element when they were asking for it, and it's an essential element, they essentially undercut his accident defense because then the jury was essentially allowed to convict him even if they thought that it was an accident. But no, the state had to prove more. It had to prove that Sperry was consciously aware that he was discharging the firearm and that he did so with practical certainty that it would result in bodily harm. And the state acknowledges that an accident doesn't fall under that. Okay. I have no further questions. Thank you. Justice Hudson. Yes, I do. I want to pick up a little bit on Justice Shostak's last question, Ms. Edwards. The specific question the jury asked is whether or not, they asked whether the defendant, it had to be proven that the defendant discharged a gun on purpose. On purpose. So arguably, that on purpose is a higher mental state than knowingly. You're doing something intentionally, on purpose, not merely knowingly. So couldn't the defense attorney have thought, hey, this jury is actually inclined to, you know, impose a higher burden on my client than the law requires, and it may inure to his benefit to leave it alone. Why wouldn't that be a plausible strategy? That would not be a plausible or reasonable strategy because in order to prove battery, the mental state is either intentional or knowingly. So either way, that part was still correct. He did need to do it on purpose. And a synonym of knowingly is on purpose. And The jury didn't have that definition at all. It's part of your argument that the response was not to further define knowingly in accordance with recent case law. So in the heat of the moment, could the defense attorney say, well, on purpose is still higher than knowingly. That was still not a reasonable strategy because the jury was also contemplating whether knowingly was simply he knew that it went off. And that strictly undercuts his theory. And clearly they were confused. They needed guidance on this essential element. And it's incumbent on counsel to make sure that the jury is rendering its verdict based on the applicable law. And the applicable law here is that the knowledge element attaches to both conduct and result. It can't be an accident. All right. Thank you, Miss Edwards. This is Justice Zinoff. I actually don't have any questions that have not already been asked by Justice Shostak or Justice Hudson. So we'll turn to Miss Kuhn for your argument. Good morning, Your Honors. Counsel Katrina Kuhn, I represent the people of the state of Illinois. May it please the court. Defendant was convicted of aggravated battery and aggravated fleeing and eluding after he drove to the victim's home and argued with the victim while remaining in the driver's seat of his car. Defendant then pointed a gun at the victim and shot the victim in the face before quickly driving away. A defendant cannot meet the tests of plain error or ineffective trial counsel based on his arguments regarding the jury instructions. Those tests require a resulted from an error or from counsel's representation that affected the result of his trial. Here, defendant's convictions are based on the evidence presented, which overwhelmingly established that the defendant shot the victim with the required mental state. Now, my argument will refute the defendant's two main points. First, the jury was correctly instructed on the elements of aggravated battery based on the use of a firearm. The jury received the applicable pattern instructions for this offense, and the trial court is required to use pattern instructions where they accurately state the law, as was the case here. The people were required to prove that defendant in committing a battery knowingly discharged a firearm and caused any injury to the victim. And the issues instruction that was given in this case tracks the language of the statute. The defendant's representation that the term knowingly needed to be included in the second element of the issues instruction does not reflect the current aggravated battery statute. The instruction that was given reflects the current statute, which was amended in 2011. The instructions require that the defendant knowingly discharged the gun, and only upon finding that the defendant knowingly discharged the weapon could the jury have found him guilty of causing any injury. Now, the defendant is not challenging the proof as to the second element. He doesn't deny that he had knowledge that firing a weapon could cause an injury. He contends he did not knowingly shoot the gun, and the instructions were clear on that. Now, because this issue was not raised in the trial court, the defendant faces the substantial hurdles of plain error or showing his counsel was ineffective in some way, and he cannot make that showing. First, as to plain error, the instructions correctly stated the law, and therefore there was no error, and thus no plain error. Even if this court did find the pattern instructions were somehow lacking, it must consider if the instructions in their entirety fully and fairly set out the law. And furthermore, defense counsel can't be deemed unreasonable for agreeing to correct instruction. And as to the first prong of plain error and prejudice under Strickland, defendant cannot establish those either. He cannot show that the verdict did not result from the evidence that was presented at trial, and he cannot even show a reasonable probability of a different result if the jury instruction had the defendant's desired reading. Now, the defendant's version of events is simply not worthy of belief. He claimed to be afraid of the victim. However, for weeks before the shooting, he drove by the victim's house and honked his horn and revved his engine repeatedly. He admittedly went to the victim's house on the day of the shooting to confront the victim. So, despite the fact that he alleged that he feared the victim, he drove to the victim's house, sat in his car, and waited for the victim to approach him, and one of the witnesses, who was Angie Rodriguez, testified that she saw the victim walk to the defendant's car and she heard them talking, but she did not watch closely because this was, quote, an everyday thing, unquote. Now, why would the defendant be arguing with the victim every day and affirmatively seek out this victim on this day in particular if he was in such fear of the victim? Now, the defendant claimed that he feared the victim and his family and they chose to stop by when the victim and his family members were all outside, and he sat in his car while the victim walked toward the passenger side of the car. The defendant was in the driver's seat, and so the victim was not even on the side of the car where the defendant was sitting. The victim was three feet away from the passenger door, so he was not even close to the defendant, and the defendant testified that he usually kept his gun in the trunk of his car, but when he drove to the victim's house, he had the gun on the passenger seat of the car, so he claimed that the gun went off when he was trying to put it in his coat, but then he said that before he put the gun in his coat, the victim saw the gun on the seat and took off. However, the victim testified that the defendant reached into his coat pocket and pulled out a gun, so defendants claim sequence of events is not credible given that the victim was shot in the face. Now, defendant also claimed he did not know the victim was shot in the face, but he testified that he heard the victim shouting for help to his family members. Now, defendant's knowledge can be shown through circumstantial evidence. After firing the weapon, he fled the scene, which shows consciousness of guilt, and he led the police on a prolonged pursuit, so just because the evidence is conflicting and that the defendant presented another version of events does not make the evidence closely balanced for a plain error analysis. Now, as to the second main issue, defense counsel was well within the bounds of reasonable representation in choosing not to provide a definition in response to the jury's question. Now, the defendant also must meet a two-part test on this issue, which is Strickland. He must show that counsel's actions were objectively unreasonable and that the result of his trial would have been different had the jury been given the definition of a knowing mental state. Now, the jury here did not ask about the result of the defendant's conduct. The jury posed a question about the required mental state for the element of the discharge of a firearm. Now, therefore, the jury asked a question to which it already had the answer, and the defendant does not dispute that the definitional and the issues instructions contain the correct mental state. The court advised the jury in responding to the question, the court advised the jury to review the instructions given and continue to deliberate. Now, just because a jury question is asked does not mean the instructions that were given were not accurate and complete. The defendant premises this argument on the first issue, which he argues was a, quote, faulty issues instruction. However, as I've already argued, the pattern issues instruction correctly stated the law. And even if defense counsel had insisted on a particular response, which, as I will argue in a minute, was within the bounds of reasonable trial strategy, to refrain from doing so, the trial court should decline to answer a question from the jury if the instructions are understandable and sufficiently explain the relevant law. And further instructions might mislead the jury or if the jury's question involves a factual issue. Now, in addition, the court can elect not to answer a jury's question if it is ambiguous and if the court's response opens a colloquy and could prompt the jury to ask further questions or to require the court to explain facts or lead the jury to express an opinion that might sway the jury one way or the other. Now, the question indicates that the jury was considering two mental states and asking which mental state applied here, and the court and the parties correctly determined that the jury already had the answer to that question. Now, as to defense counsel's performance, the jury was instructed on attempted murder, aggravated battery, and reckless conduct. Now, here defense counsel was, in fact, very effective in securing an acquittal for attempted murder, given the defendant's incredible testimony that he didn't remember aiming the weapon or pulling the trigger, but yet stating that he certainly knew that the weapon discharged inside the car. Now, at the end of closing argument, defense counsel asked the jury to find defendant not guilty of attempted murder and not guilty of aggravated battery, but guilty of reckless conduct. So the question, the jury question that was posed indicated that the jury was deciding between the mental states pertaining to attempted murder and aggravated battery. Now, when the court first showed the jury's question to defense counsel, counsel's response was that the jury should continue to deliberate based on the instructions it had, and defense counsel's position was consistent throughout the discussion. Defense counsel had just argued to the jury that it should only consider reckless conduct, so it was entirely reasonable that when faced with the jury's question, defense counsel would not choose to highlight the two most culpable mental states and risk diverting the jury's attention from a reckless conduct verdict. That defense counsel had seen the jury's reaction to, in response to the defendant's testimony, and so counsel could consider how credible the jury had found defendant's testimony, and after weighing the question and the potential verdicts that the jury could reach, defense counsel agreed that no response should be given to the jury question, and that was well within the bounds of reasonable trial strategy. Now, in conclusion, the given instructions allowed the jury to consider defendant's theory of defense. The defendant can't show that the jury instructions or the response to the jury question during deliberations were confusing, or I'm sorry, were erroneous. It is clear that the jury rejected the defendant's claim that he did not seek a confrontation with the victim when, in fact, the defendant sought out the victim and brought a weapon with him and had it handy. Now, the defendant must bear responsibility for that choice. The jury convicted defendant based upon the evidence that established his guilt. Counsel, I believe your time is about up. If you can wrap up, please. That is the end of my argument, Your Honor, and I am open to any questions. Okay. Thank you very much. Justice Shostak? Yes. I'm going to ask you the same question as I asked defense in. The Illinois Supreme Court rules tell us that IPI instructions shall be used unless the accurately reflect the law, does not accurately state the law. Did the court make that finding here when it declined to give a 5.01 knowing definition instruction? No, Your Honor. The court did not make a finding that the instructions that were given did not correctly state the law. And here you had to prove knowingly that he discharged the gun and he caused the harm, correct? Yes, Your Honor. Yes, Your Honor. And that was shown in both instructions that the jury was given. Right. And the parties, either party... 1115 and 1116. And you submit those aren't inconsistent, correct? Correct. Okay. People versus Averett. The defendant cites that the court has a duty to hear by the jury's question. Wasn't it clear where the confusion lied with the term of knowingly? Well, I think that the jury question asked what the required mental state was. I don't think that the jury was asking a question that could be responded to without influencing the jury in some way. And I think that the correct response was that the instructions that they had been given, you know, covered their question. The jury did not ask for a definition. Well, basically, they did. Didn't they? Well, I would respectfully disagree, Your Honor. The jury did not ask what is knowingly mean. They asked for what the conduct... They said, does knowingly discharge of a firearm mean he intended to discharge the gun on purpose or he knew a gun was discharged? Go ahead. Well, as Justice Hudson noted, I believe, you know, the jury was fluctuating between intent and knowledge. So, it was clearly considering the instructions that it was given and trying to decide between what defendant's culpable mental state was. However, they did not seem to be uncertain. They did not seem to be thinking... They didn't ask anything about an accident. Okay. The Lowry court, the defense sites Lowry, how is that case any different than the case we have before us? It's practically identical, isn't it? How do you distinguish it? Well, Your Honor, Lowry is distinguishable on several points. First and foremost, Lowry precedes the 2011 revisions to the aggravated battery statute, and it precedes the current set of pattern instructions that go along with that statute. So, therefore, the issues instruction in Lowry reflected the prior version of the statute. And in Lowry, the jury asked a different question. They asked what knowingly meant. The jury in Lowry asked, does knowingly imply that it wasn't an accident, or can it be accidental and knowingly? And also in Lowry, the appellate court did not find error that was solely based on any decision to not further instruct the jury. The court concluded that the decision could not have attributed to any sound trial strategy by the defense counsel. I mean, the defendant was charged with attempted murder and aggravated battery with a firearm and armed robbery, and defense counsel did not argue that the shooting was accidental. And defense counsel in Lowry, in deciding that no response should be given, stated on the record its reasoning, which was based on an entirely different instruction, which the first district pointed out in Lowry. And so defense counsel clearly wasn't even considering the aggravated battery instruction. So counsel in Lowry could not have been deemed to have been making a reasonable strategic decision. Now here, on the facts of this case, counsel made a very reasonable decision based on the facts here. Well, let me just read the question. Does knowingly discharge of a firearm mean isn't that asking for a definition? I don't know. You don't have to answer. I guess it's what it means. I'm sorry. I didn't hear the last part. They're asking what it means. What does this mean? I guess that, in my opinion, that's asking for a error, correct? Based upon trial counsel's behavior or his conduct, correct? But can we find a reversible error in that the trial court erred in failing to give that definition? Well, the definition, defendant is arguing on the second issue, which deals with the failure to, or the decision not to provide the definition. Defendant raises a argument that a defense counsel's ineffectiveness. Whether he could have made a reasonable decision you can, the court can decide on any basis in the record. However, as I argued, just because a jury question is asked does not mean that the instructions were not accurate. You can't ignore what defendant's testimony was simply not believable. And the instructions that were given were correct. I guess my question is, I don't understand why both the state and the defense and the court wouldn't just give the definition of knowingly when it's an IPI instruction. It's not like you have to sit around and rack your brains on how to answer the question. It's an IPI instruction and would knowingly have hurt the state? No. Would it have hurt the defense? Maybe. I guess that's my question is how is it that we don't give an IPI definition when the jury asks for it? Well, again, this needs to be looked at through the lens of defense counsel's what is being raised. It was not, you know, that's the argument that defense, that the defendant is making. You know, so is your question if the jury asks, does the court always have to give an instruction on a mental state, you know, that we If there's an IPI instruction for it? If there's an IPI instruction for it? Well, the people cannot agree that all circumstances that that instruction must be given, you know, the jury, you know, that instruction would not have would not have helped the defense at all. And so the question is whether, you know, defense counsel was within the bounds of reasonable representation. And our argument is that they were. I guess my issue is if the instruction were given, we probably would not be here. And it was an IPI instruction of which everyone had the answer, knew the definition, it's IPI, what is the basis for not giving it? Is it error not to give it? I guess it's our question that we have to to address. Thank you. Justice Hudson. Yes, I do have a question. Counsel, we're talking about whether or not you seem to be, you know, articulating that the defense counsel's acquiescence to the courts and the state's position that further instruction should not be given defying knowingly was trial strategy. Where did you get that idea from? In other words, let me ask you a point of question. When there was a colloquy at the bench about how to respond to the jury's question, the defense counsel articulated at that time anywhere in the record that it was a matter of trial strategy. He preferred not to give the instruction because it helps his case that the jury is confused. Where did you draw the conclusion that this was strictly trial strategy? Well, Your Honor, I don't think that we have to, you know, everything that defense, everything that pertains to defendant's trial strategy is not on the record. I think we can surmise that the defendant did not want to highlight a less culpable, a more culpable mental state when it was clear that the jury was considering one and the defendant, defense counsel, had just argued that the jury should find the defendant guilty of reckless conduct. And so... Isn't that pure speculation on your part? There's nothing in the record that you can point to to support that conclusion, is there, other than your interpretation? Well, I would point out that the immediate response of the defense counsel to the jury's question, which is at, you know, pages, page 1208 or so of the record, is that counsel's response was that the jury should deliver it based on the instructions it had. You know, and defendant's, you know, really not plausible version of events supports that argument. Again, defendant, defense counsel had to play the hand it was dealt and would probably have been deemed ineffective if it, you know, pretty much handed, you know, handed the jury the tools it needed to then return a conviction. So just to clarify, the defense counsel, on his or her own, volunteered the jury should keep deliberating based on the instructions. That was the only response from defense counsel? Defense counsel responded that the, you know, that the instructions, you know, jury should deliberate based on what it was given. And that is the only response on the record after the discussion between court and the state. Doesn't sound like a thoughtful deliberation on trial strategy, but so here's what I'm trying to tie this into. I think Lowry is very close. Lowry adopted, was added as a result of People v. Browder, which found reversible error where the circuit court did not provide an instruction to the jury defining knowingly after the jury expressed confusion. Clearly, the jury was confused about the definition. They asked the question. So I think that Lowry is on point. And, you know, you're making a valiant attempt to save it under a trial strategy argument. But, you know, I'm wondering about how strategic it was to simply respond, keep deliberating, you have the instructions. I think that's the crux of the whole debate here. But any event, that's all I have.  Um, you know, Browder, you know, in Browder, the jury had, the jury was made a much different position on the record than the jury was here. And Browder, the jury indicated it was deadlocked and made several inquiries to, you know, made several inquiries, asked several questions, and expressly indicated some confusion. So I would, I would ask that those, those distinct facts be considered, Your Honor. Okay, thank you. I have one question. With respect to the accuracy of the instructions that the jury was given, under the issues instruction, wouldn't this jury be able to find the defendant guilty merely for discharging the firearm, even if accidentally, in other words, almost a strict liability offense? No, no, Your Honor. For, for there to be a strict liability offense, there would, this is not a strict liability offense, because the instructions include a culpable mental state. You know, both, both the definitional and the issues instruction state a culpable mental state. The instructions required the jury to find that he knowingly discharged the gun. And the definitional instructions stated that he knowingly had to cause bodily harm. So, no, I would, I would not agree that this would be, this could be considered a strict liability issue. Okay. And that is without the additional definition of knowingly in response to the if, you know, defendant's argument that knowingly had to be included in the second element would render it a non-pattern jury instruction. And the bottom line here is a lack of prejudice. Okay, thank you. All right, at this time, Ms. Edwards, you may give your rebuttal. Thank you. Thank you, Your Honors. I first want to point out for the second issue, defense counsel acquiesced in the trial court's error, lacking lari. So, it's more appropriate to raise as an ineffective assistance of counsel claim, but of course, this court can find error on any basis in the record. And to discuss Lori a little bit here, as Justice Hudson noted, Lori is on point here and pursuant to Lori, it is reversible error to not offer IPI 501B, which was as the state recognized a tool necessary for the jury to determine the case. And we don't know counsel's reasoning for acquiescing to the trial court's response here because counsel didn't meaningfully participate in the discussion. And to go to the closely balanced analysis, I want to point out that the assessment does not involve the sufficiency of close evidence, but rather the closeness of sufficient evidence. And the credibility of the witnesses was crucial here because despite the state's evidence at trial, the jury was not completely convinced that they were more credible than Sperry's version. And that's not only evidenced by the jury notes, but by the verdict itself. Notably, the jury's version was that Sperry threatened Angel Ortiz's life, pointed the gun at his face and shot him. However, the jury acquitted him of attempt murder and convicted him of the offense that they were confused about. So here, the incorrect instruction and incorrect response to the jury's question essentially left him defenseless because it allowed the jury to convict him even if they believe the shooting was an accident. And for those reasons, again, John Sperry asks that this court reverse his aggravated battery conviction and grant him a new fair trial. Thank you, your honors. I'm available to take any more questions. Justice Shasta? Given the knowingly definition under 5.01b, that may be more detrimental to the defense, don't you think? It could be. I respectfully disagree. Whether it was detrimental or not, it was required to be given. It was, as this court recognized, it was an IPI instruction. The committee comments say that it should be given in situations such as this, where the jury is confused about the representmental state. However, despite this, despite the committee comments and despite case laws, such as people versus lawyer, they still decided not to give it. That is not a reasonable trial strategy. It cannot be deemed as trial strategy. Thank you. Nothing further. Justice Hudson? Thank you. I have nothing further. And I don't have anything further either. The court would like to thank counsel for their arguments this morning. We will take the case under advisement and render a decision in due course. The court stands adjourned for the day since we have no further oral arguments. Thank you again, counsel. We appreciate your participation. Thank you.